**Anne Rhein DONAHUE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 76–H–276.**

United States District Court, S. D. Texas, Houston Division.

June 15, 1979.

John B. Murphrey, Riddle & Murphrey, John A. Betts, Houston, Tex., for plaintiff.

John T. Johnson, Asst. U. S. Atty., Houston, Tex., Kathlynn G. Fadely, Aviation Unit, Dept. of Justice, Washington, D. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### STATEMENT OF THE CASE

NORMAN W. BLACK, District Judge.

Plaintiff filed this action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, asking for damages for her personal injuries and for the loss of her husband, Timothy Alfred Donahue, in the crash of an airplane of June 30, 1973, in Raymondville, Texas. Trial of the case began June 4, 1979, and upon completion of Plaintiff's case and presentation of one witness by Defendant, on June 8, 1979, the Court granted Defendant's Motion for Directed Verdict.

### FINDINGS OF FACT

On June 29, 1973, Gary Whitworth, a licensed pilot, accompanied by Timothy Donahue, rented a Piper Cherokee airplane, N5047T, in Waco, Texas. Donahue, while not licensed, had taken flying lessons and had made a solo flight. Whitworth and Donahue flew to Dallas, Texas, in the Cherokee where they picked up Donahue's wife, Plaintiff Anne Donahue. The three then proceeded to Austin, Texas, where they picked up Cynthia Walker, a friend of Whitworth's. All four people then flew to Corpus Christi, Texas, and ended up in Brownsville, Texas, the evening of June 29, 1973.

There is no evidence of the amount of gasoline taken aboard the airplane when it was rented, but during the two days in question, only twenty-five gallons were purchased.

The ultimate destination of the weekend trip was the beach near the Cameron County Airport, Port Isabel, Texas, and Donahue had arranged for a leased automobile to meet them at the Airport. The party of four left Brownsville Airport at 10:16 a. m.

on June 30, 1973, to fly to Cameron County Airport, a distance of some eighteen miles, requiring an estimated eight minutes of flight time. If the pilot, Whitworth, had been on a proper northeast heading from Brownsville, he would have sighted the Cameron County Airport after flying from four to five minutes.

According to a transcript of a communication between N5047T and the Air Traffic Controller at Kingsville Naval Air Station, the Pilot asked to be located on radar since he was "misdirected" and needed help in finding his position. The transcript time of the initial contact is shown as 10:55 a. m., but the exact time of the original distress message on the emergency frequency is in dispute. The Controller testified, and the Court finds, that the tapes used to record messages at Kingsville were not accurate. There were twenty-seven tapes used simultaneously to record activity at the Station and it was very unusual for each machine to be loaded with tapes of the exact same length at the exact same moment of midnight. Such exactness would have been required to give an exactly accurate time on the transcript. The Controller's log no longer exists, but it is his testimony that he believes the original call from the aircraft came between 11:00 a. m. to 11:05 a. m., and that time comports with the other evidence.

The Pilot reported his location as "twenty to thirty miles north" of Cameron County Airport (Port Isabel) and on a heading of 180 degrees at 1,500 feet. He reported fuel on board at one-fourth tank. The Controller, who had a direct telephone connection with Houston Center, but no direct telephone connection with other stations in the area, made immediate contact with Houston Center on the "landline" and reported the distress call. The Kingsville Controller then attempted to locate the plane on his radar, but was not able to see it although his radar range was forty to fifty miles. Based upon the lack of radar sighting, the Pilot's reported position moving away from Kingsville in a southerly direction and a weakening of the radio signal from the

aircraft, the Kingsville Controller advised the Pilot to contact Brownsville Approach Control on their assigned frequency.

According to transcripts from Brownsville Approach Control, Whitworth contacted them at 11:10 a. m. That time is found to be more accurate than the Kingsville tape times because the aircraft was plotted and timed from 11:10 a. m. until it crashed at approximately 11:35 a. m. in Raymondville.

Plaintiff conceded, and the Court specifically finds, no evidence of negligence on the part of Defendant from the time of the initial Brownsville contact and thereafter. It is only the action of the Kingsville Controller which Plaintiff asserts as negligence.

After the contact with Brownsville both by Houston Center on the landline and almost simultaneously by the aircraft, various navigational devices on the ground and on the aircraft were used to pinpoint its location. At 11:16 a. m., the Pilot reported seeing a town he thought to be Raymondville, but Brownsville advised that the nearest airfield was Johnson Field at Port Mansfield. The Pilot was directed to fly eight miles *southeast* to the field (which had a 3,200 foot runway). The Pilot acknowledged the advice, but flew *southwest* for ten to fifteen minutes longer.

The aircraft approached Raymondville, not from the north or east as would have been reasonable, but from the south. Instead of making a straight-in landing because of his now-acute fuel shortage, the Pilot came in high, then tried to make a left turn for a "go-around." The plane's motors were then starved for fuel, the motors sputtered, then stopped, and it crashed into the corner of a building near the runway at about 11:40 a. m. All aboard were killed except Plaintiff who was badly injured.

At all times in question, the weather was good and visibility was excellent. Had Pilot Whitworth executed a right turn instead of a left turn at Raymondville, he would have pointed the aircraft toward an open field and away from the center of Raymondville.

The airplane crashed because the Pilot failed to fill the tanks with gasoline before leaving Brownsville, because he overflew his destination by approximately twenty to thirty minutes before asking for help, because he failed to land at Johnson Field at 11:16 a. m. and, ultimately because he failed to make a straight-in landing at Raymondville.

Every effort was made by Defendant's agents to locate the plane and get it on the ground before its fuel ran out. Defendant's efforts were thwarted at every turn by the Pilot.

## CONCLUSIONS OF LAW

■ The Defendant's Air Traffic Controllers were not negligent, and the negligence of the Pilot was the sole proximate cause of the disaster.

Even if the time of 10:55 a. m. shown on the Kingsville transcript is accurate, that fact would only mean that the aircraft was closer to Kingsville than the Pilot and Controller thought it to be. The fact remains that the Controller, with radar range of up to fifty miles, could not see the plane on his scope, and he acted properly in "transferring" the plane to Brownsville Approach Control for their prompt and efficient handling. The plane remained in the air at least twenty-five minutes after the transfer.

■ Pilot Whitworth was obligated to know the facts which were material to the safe operation of his aircraft. *American Airlines v. United States*, 418 F.2d 180 (5th Cir. 1969). He was primarily responsible for and had final authority for that safe operation. *United States v. Schultetus*, 277 F.2d 322 (5th Cir. 1960). Nothing the air controller does relieves the pilot of his basic responsibility.

Judgment will be entered for Defendant, and each party will pay his own costs incurred.

The Clerk will enter this Order and provide all parties with a true copy.